In the Matter of the Claim of MARY D. ACKERMAN et al., Respondents, against DAIRYMEN'S LEAGUE COOPERATIVE ASSOCIATION, INC. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, March 18, 1960.

*Hancock, Dorr, Ryan & Shove* (*John F. Gates* of counsel), for appellants.

*Coleman & Jackson* for claimants-respondents.

*Louis J. Lefkowitz, Attorney-General* (*Edward A. Bailey* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

GIBSON, J. An employer and its insurance carrier appeal from an award of death benefits. Appellants contend, among other things, that the board erred in applying the presumption that the claim comes within the provisions of the act and in applying, also, the presumption against suicide. (Workmen's Compensation Law, § 21, subds. 1, 3.)

Decedent, a divisional representative of a milk co-operative association, was required to spend considerable time during and after the usual working hours and at night, in business promotion and in public relations activities in his territory. The employer furnished him an automobile and paid the expenses of its operation. In the early afternoon of the day which the board has found to be that of his death, decedent left the employer's Binghamton office, apparently intending to go to a hotel. There was evidence that he planned later to go to his home at Homer, some 45 miles north of Binghamton, and thence to Virgil, about nine miles south of Homer, to keep an engagement to show certain movies at a meeting. It is undisputed that the employment required him to obtain and exhibit movies and that the employer supplied projectors and like equipment which, in the past at least, he had kept at his home when not in use but which he had on this occasion placed in the car when he left his home to go to Binghamton. There is no evidence as to his whereabouts from the time he left the office until his body was found 11 days later in a pond which he had apparently entered in the company automobile, which was found in deep water shortly after the discovery of decedent's body. The pond was a mile or two north of decedent's home.

Appellants contend that decedent's death was suicidal; the board found accident. From the undisputed physical facts the parties draw conflicting inferences upon this issue. The tie rod controlling the steering mechanism of the automobile was found broken but appellants argue that this occurred either when the car entered the water, passing over a steep bank, or when it was dragged out, contending that if it had broken while the automobile was on the highway, the car would not have taken a straight course between two posts (about 20 feet apart and 12.5 feet from the pavement) and have then proceeded some 35

feet to the water, as inferred by a State Trooper, who based his conclusion upon certain faint tracks in the grass and marks on the top of the bank. In the automobile were found letters addressed to decedent's superiors or associates, one written the day prior to his disappearance and the other four days before. The later letter is stronger as respects a possible inference of suicidal intent, referring, as it does, to " all the heartache I am going to cause ", but both letters were enclosed in envelopes addressed for mailing and, of course, neither had been sent. There was evidence that decedent had been concerned lest a dereliction of many years before should come to light. On the other hand, his superiors had assured him that the incident was trivial and there was testimony from other witnesses that shortly before his disappearance he was in good spirits.

The presumption against suicide applies " in the absence of substantial evidence to the contrary ". (Workmen's Compensation Law, § 21, subd. 3.) Appellants contend that the board substituted the presumption for proof, weighed it against the carrier's evidence and accorded the presumption greater weight. As indicative, appellants cite the language of the board decision that " The presumptions under Section 21 of the Workmen's Compensation Law have not been overcome by substantial evidence "; but this was also the language of the Court of Appeals in *Matter of Graham* v. *Nassau & Suffolk Light. Co.* (308 N. Y. 140, 145) in which, as here, it was possible to draw conflicting inferences from the existent physical factors. That decision, in fact, reversed the order of this court which, in reversing the board's decision and award, had held that from the physical situation and other facts, fully as significant as here, there did arise " substantial evidence to the contrary ". (283 App. Div. 228, 232.) In discussing the common-law presumption, the Court of Appeals has even more recently said: " When death has resulted from violence, the presumption against suicide does more than shift the burden of proof and upon having done so disappears from the case; it continues to the end of the case and if a fair question of fact is presented as to whether death was due to suicide or accident, then the jury should answer accident (*Wellisch* v. *John Hancock Mut. Life Ins. Co.*, 293 N. Y. 178)." (*Begley* v. *Prudential Ins. Co. of America*, 1 N Y 2d 530, 533.)

If, however, full recognition be accorded the principle for which appellants contend and we assume that the presumption against suicide disappeared upon the introduction of the carrier's evidence, it does not follow that suicide was thereby established. There was substantial evidence against suicide

which the board could find preponderant and that seems to us the basic purport of its decision.

Similarly, the board did not, in our view, find the presumption of compensable accident the exclusive predicate of its award. Indeed its memorandum decision particularizes the evidence upon which its determination was based. In any event, the presumption is operative once evidence or reasonable inference therefrom brings the unwitnessed accident "within the time and space limits of the employment". (*Matter of Pierorazio* v. *Pettignano*, 3 A D 2d 616, motion for leave to appeal denied 2 N Y 2d 710, citing 1 Larson, Workmen's Compensation Law, § 1032.) The questions posed by the proof are not without difficulty, however, and require discussion.

It was a reasonable inference that decedent intended to fulfill his engagement to show movies at Virgil. He came to his death in the vicinity (after traveling more than 45 miles from the Binghamton office) and while using the business automobile provided him, in which was found the movie equipment to be used at Virgil. It is true that he was north of Virgil and of Homer as well and that it cannot be demonstrated whether the car was proceeding south or north prior to leaving the highway. However, these considerations of distance and direction are not conclusive. In *Matter of Daly* v. *State Ins. Fund* (284 App. Div. 174, motion for leave to appeal denied 307 N. Y. 942) the unwitnessed accident occurred when decedent was seven miles from the hotel in which he expected to resume work and while he was proceeding in a direction away from it. This court, by BERGAN, J., said (p. 178): "There is, moreover, in a death case, a presumption that the unexplained accident occurred in the course of employment and that presumption is re-enforced somewhat when it is shown that just before the accident the employee had been actually engaged in his work; and when it could be found that at a time just after the accident he had intended to continue the work. The presumption is not to be completely lost by the circumstance that at the precise time of the accident itself an itinerant employee was driving his automobile away from the next point of work." It is true that when decedent left the Binghamton office at about 2:00 P.M. there was a suggestion that he might watch a baseball game on television and appellants argue that, therefore, his last known activity was one purely personal. There seems, however, ample basis for the inference that when he did leave Binghamton in the company car for the 45-mile journey to Homer, he resumed his employment; and, further, that he intended to continue the work by attending the Virgil meeting and would have done so

but for the accident. Thus the factors of time and space could well be found within the principle of the *Daly* case.

Although the situs of the supposed accident was not, in our view, so remote from Virgil as to render untenable the basis of the board's decision, we consider that it could also properly be found that death occurred in the course of employment by reason of the fact that decedent was traveling in the immediate vicinity of his home. The pond was but one-fourth mile from the Homer village limits according to one witness and one or two miles from decedent's home according to another. It could be found from his mother's testimony that decedent intended to come to his home before going to the meeting at Virgil. Course of employment and coverage of outside employees from the time they leave home until they return has been held to depend upon a distinction between outside employees generally and those who, although having no fixed place of work, are required to report to and check out of a place of business. (*Matter of Blackley* v. *City of Niagara Falls,* 284 App. Div. 51.) It is reasonably inferable that decedent should be classed in the broader category, considering his manifold and largely unsupervised activities in the many agricultural communities of a large territory and his extended, and sometimes extremely late hours, as well as the fact that he did work out of his home as well as at and from the Binghamton office, which was, however, 45 miles away.

In either view of decedent's status as an outside worker, it was reasonable to find that the event occurred within the bounds of the employment as respected space and time (*Matter of Pierorazio* v. *Pettignano, supra*). This being so, *Matter of Kleid* v. *Carr Bros.* (300 N. Y. 270) is in point. It was there held (p. 272), "Since this unwitnessed accident took place during working hours in a place where Kleid's work commonly took him, the section 21 presumption justified the board's finding that the accident arose out of and in the course of employment, even though Kleid's presence at the exact spot was unexplained ".

Appellants' additional contentions relate to notice and to proof of dependency. Neither seems to us well founded.

The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

BERGAN, P. J., COON, HERLIHY and REYNOLDS, JJ. concur.

Decision and award unanimously affirmed, with costs to the Workmen's Compensation Board.