MARSHALL A. WELLISCH et al., Infants, by TILLIE WELLISCH, Their Guardian ad Litem, et al., Respondents, *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant.

Argued June 12, 1944; decided July 19, 1944.

*Lester T. Hubbard* for appellant. I. The verdict of the jury was against the weight of the evidence. II. The defendant sustained the burden of proving that the death of insured was self-inflicted. III. The evidence refutes any theory of accidental death. IV. Where there was no evidence that the death of the insured was accidental, no such question should have been submitted to the jury. (*De Gogorza* v. *Knickerbocker Life Ins. Co.,* 65 N. Y. 232.) V. Where the insured knowingly and intentionally commits an act (in this case the taking of the pills) which might reasonably result in death, there is no liability of insurer to pay under a policy of insurance excluding liability resulting from self-destruction. (*Fanti* v. *Travelers Ins. Co.,* 290 N. Y. 782.) VI. Where the evidence tends to show that death was self-inflicted, and no other reasonable inference may be drawn from the evidence, it is the duty of the trial court to direct a verdict upon the theory of death by suicide. (*White* v. *Prudential Ins. Co. of America,* 105 N. Y. S. 87; *Pagett* v. *Conn. Mut. Life Ins. Co.,* 55 App. Div. 628; *Seybold* v. *Supreme Tent,* 86 App. Div. 195.) VII. Defendant's motion for a dismissal should have been granted. The policy provides for payment " upon receipt of due proof on the Company's prescribed forms, of the death of the Insured * * * ". The plaintiffs failed to present the required proof. (*Vecchio* v. *Metropolitan Life Ins. Co.,* 224 App. Div. 301; *Giaimo* v. *Metropolitan Life Ins. Co.,* 132 Misc. 487.) VIII. The judgment should be reversed as a matter of law. (*McQuade* v. *Prudential Insurance Co. of America,* 166 Misc. 524; *Powley* v. *Equitable Life Assur. Society,* 257 App. Div. 324; *Hundert* v. *Commercial Travelers Mut. Accident Assn.,* 244 App. Div. 459; *Matter of*

180

*Rhoades* v. *Miller Bros. Construction Co.,* 244 App. Div. 850; *Shipman* v. *Protected Home Circle,* 174 N. Y. 398; *Fowler* v. *The Mutual Life Ins. Co.,* 4 Lans. 202.)

*Werner H. Pigors, Nathan M. Medwin* and *Henry Weiss* for respondents. I. The burden of proving suicide is upon the defendant. (*Cramer* v. *Metropolitan Life Ins. Co.,* 261 App. Div. 1018; *Gardner* v. *Northwestern Mut. Life Ins. Co.,* 246 App. Div. 868, 272 N. Y. 592; *Martorella* v. *Prudential Ins. Co.,* 268 N. Y. 586.) II. The evidence fairly presented questions of fact for determination by the jury. (*Martorella* v. *Prudential Ins. Co.,* 268 N. Y. 586.) III. The verdict is in accord with the weight of evidence. IV. Proof to defendant required by the policy was established. (*McCaffry* v. *Metropolitan Life Ins. Co.,* 172 Misc. 252, 261 App. Div. 452, 287 N. Y. 704; *Strang* v. *Prudential Ins. Co.,* 263 N. Y. 71; *B. L., T. & S. D. Co.* v. *K. T. & M. M. A. Assn.,* 126 N. Y. 450.) V. Upon the evidence the jury might and did reasonably find that the deceased was without intention of suicide. That he may have accidentally and without suicidal intent have overdosed himself does not permit the defendant to escape liability. (*Mansbacher* v. *Prudential Life Ins. Co.,* 273 N. Y. 140.)

DESMOND, J. Plaintiff Tillie Wellisch is the widow, and the other two plaintiffs are the surviving children, of Morris Wellisch. The suit is brought to recover benefits promised to them in a life insurance policy on the life of Morris Wellisch, issued by defendant insurance company, of which company the insured was an employee during his life. The answer asserts that the insured died by suicide and points to a policy provision which says, " if the insured shall die within two years from the date of issue of this policy by self-destruction while sane or insane, the amount payable herein shall be limited to the premiums paid hereon." The insured died within two years from the issuance of that policy and the company has tendered to plaintiffs an amount equal to the premiums paid on the policy during the life of the insured. At the end of the trial defendant moved for a directed verdict in its favor on the ground that it had produced " sufficient evidence to overcome a presumption against suicide ". The motion was denied and the jury found for plaintiffs. The Appellate Division affirmed the judgment,

declaring: "there was a clear-cut issue of fact which the jury decided in plaintiff's favor and we cannot say upon this record that the verdict was against the weight of the evidence". (266 App. Div. 1046.) We granted defendant's motion for leave to appeal so that we might examine into defendant's contention that the evidence of suicide is so conclusive as to overcome the presumption against suicide and to leave no reasonable basis for a jury finding of accidental death.

On the afternoon of May 11, 1942, the insured was found in a comatose condition sitting in his automobile which had left the highway and crashed into a tree. The road was dry and the weather clear. He was taken to a hospital and died a few days later. Medical experts ascribed his death to barbitrate poisoning, drawing that conclusion from the discovery in his body after his death of a drug known as seconal, and from other indications. Seconal is one of the group of drugs known as barbitrates. When taken in small doses it has an anaesthetic or sedative effect. In larger doses it brings on unconsciousness which sometimes terminates in death. It is prescribed and administered by physicians. The actual quantity of seconal found in the body of insured was less than a grain but the proof shows that the drug is largely absorbed or assimilated by the body or excreted therefrom. Detection of the small amount of seconal in the organs, after the death of insured, was said to be an indication that a large quantity had been taken. There was, however, no definite proof in the record as to just how large that quantity was. One of the experts said that the maximum dose which could be taken without fatal effect was from 10 to 50 grains. The insured suffered from headaches and, according to some of the witnesses, had been in the habit of taking seconal capsules to relieve his suffering. These he customarily borrowed from an aunt of his wife who lived with the insured and his family. The aunt herself took seconal capsules for some purpose and had a doctor's prescription for them. Earlier on the day on which the insured was found in his car, he had gotten six or eight capsules from the aunt and had told her that he would have her prescription filled at a nearby pharmacy. The pharmacist testified that the prescription was refilled at the request of the insured and that the insured took away with him

the new box containing twenty-four capsules. The wife of the insured said that her arrangement with her husband was that the new box was to be left at the pharmacy and that she was to call for it later but that she never did call for it because she was notified of her husband's illness before she could go to the pharmacy.

Defendant insists that this evidence as to the seconal capsules, plus the other proof which we are about to describe, conclusively proved suicide. The insured, who was a solicitor of life insurance business and a collector of premiums for defendant, came home about noon, as was his custom, on May 11, 1942. He complained of a headache, was in a nervous and irritable mood and did not finish his noonday meal. Later he became annoyed by some activities of his children and slapped one of the children with the result that the child fell, broke a glass which he was carrying, and was cut. Some commotion followed and the aunt of the insured's wife thought it appropriate to call the police, which she did. The wife testified that when the police arrived they were told by the insured that it had been a mistake to call them and that the whole difficulty had been ironed out. One of the police officers testified that Mrs. Wellisch told the police that she and her husband had been having trouble, that she wanted her husband arrested and that she was going to get judgment in an action for separation which, according to the police, she stated she then had pending. The police officers admonished the couple not to call the police again but to take their troubles to court, whereupon, according to the officer, the insured said: " Well, you won't come back, she won't be bothered with me any more ". This remark is pointed to by defendant as a statement of Wellisch's intent to kill himself. Before that incident insured had announced to his family that he was going on a fishing trip that day but they, according to Mrs. Wellisch, had dissuaded him from it, because of his headache. After the police had left, again according to Mrs. Wellisch, she and her aunt told the husband that since he was so upset it would be well if he would go out for awhile. Mrs. Wellisch testified that her husband then got together his fishing equipment, fishing clothes, lunch and a jug of water and that she helped her husband put those things into his car. He drove away, ostensibly

on his way to his favorite fishing spot. It is said that the road he too'· and on which he was la:er found was on the route to that fishing place. In his car the State Troopers found written on a scrap of paper in the handwriting of insured and signed with his name, the following: " All life is only one dark hour. M.W. The best thing in this hapless strife is the end of life." Appellant insists on calling this the " suicide note " but surely it is not an unequivocal threat of self destruction. The wife swore that her husband had been in the habit of writing what she called poetry, and that she at times had typed and preserved for him some of his writings. There is proof that insured was at times an irritable and quarrelsome person but there is other evidence that he was fond of his family, had various hobbies, stood high in the estimation of his employer and that his earnings for a period shortly before his death were higher than he ever before had enjoyed. A few ·days before he left home on his last journey his wife at his request had written letters of inquiry to several vacation resorts asking whether cabins with fishing and swimming facilities were available for insured and his two small sons. His vacation was due to begin on July 2nd and the wife testified that he had discussed with her his plans for a vacation trip, apparently including her in those plans.

The Trial Justice charged the jury that plaintiffs were " entitled to recover on due proof of the death of the deceased, unless you find from the evidence that defendant has established to your satisfaction by a fair preponderance of the evidence that Morris Wellisch committed suicide or self destruction." He called to the jury's attention that there is a presumption against suicide but told them that the presumption might be overcome " not only by verbal testimony but by reasonable deductions from the facts as you find them to be established." Before they might find a verdict in favor of defendant, said the Justice, they " must be satisfied that deceased came to his death by self destruction or suicide, and that regardless whether he was sane or insane." Finally he told them that, since this was an action on a life insurance policy and not on an accident insurance policy (see *Ostrander* v. *Travelers Ins. Co.*, 265 N. Y. 467), there was no burden on plaintiffs to show that the death came about through accidental, rather than suicidal, means.

It was conclusively shown that Morris Wellisch died from an overdose of seconal but a question was presented as to whether he took the extra capsules by mistake or with the intention of killing himself. All the proof was circumstantial. There was no forthright threat of suicide. The man's statement to the police and his scribbled thoughts on life and death were no more than equivocal. There was an innocent reason for the possession and use of the drug, in some quantity. Reasonable men, we think, might reasonably come to one or the other answer to the question of fact sent to the jury by the Trial Justice. The Appellate Division was unanimous in its view that the evidence not only permitted a negative answer to the question as to suicide, but that such an answer was not against the weight of evidence. We are forbidden in such cases to reweigh the opposing proofs.

We add a comment on the " presumption against suicide " about which much is said in these briefs. That presumption is not one of those that takes the place of evidence so as to create a question of fact even when all the real proof is the other way. (*N. Y. Life Ins. Co.* v. *Gamer,* 303 U. S. 161, 171.) Nor is it the sort of " presumption " that serves only to shift the burden of proof and disappears from the case as soon as evidence to the contrary is offered. (See *People ex rel. Wallington Apartments* v. *Miller,* 288. N. Y. 31.) It is really a rule or guide for the jury in coming to a conclusion on the evidence. Suicide " is contrary to the general conduct of mankind " (*Mallory* v. *The Travelers' Ins. Co.,* 47 N. Y. 52, 54-55) and the presumption against it is one of the "judicial recognitions of what is probable " (Thayer, Preliminary Treatise on Evidence, p. 334; see 9 Wigmore on Evidence [3rd ed.] § 2570). Juries are authorized to take heed of the truth drawn from general human experience, that death by suicide is an improbability, that most men cling to life. The " presumption against suicide " means that when death by violence is shown and an inference must be drawn by the jury as to suicide or not, then the jury should in justice and good conscience draw the inference of accident, not suicide. This presumption is one aspect of the broader rule that where evidence is susceptible of two constructions, the construction which does not imply criminality or moral turpitude is to be

favored. (*Berkey* v. *Third Avenue Railway Co*, 244 N. Y. 84, 92; *Starr* v. *Peck*, 1 Hill 270, 272.) Of course, that does not mean that there should be a finding against suicide when the circumstances are wholly inconsistent with a finding of accident and there is no reasonable hypothesis available except that of suicide. (See, for instance, *De Gogorza* v. *Knickerbocker Life Ins. Co.*, 65 N. Y. 232.) It means only that a fair question of fact as to accident or suicide should be answered: " accident ". When in such a case the jury gives that answer, then no question of law is left for us. For example, in *Martorella* v. *Prudential Ins. Co.* (268 N. Y. 586) we affirmed a judgment for the beneficiary despite proof that the insured, a hospital nurse who died from the effects of bichloride of mercury poisoning, told a physician before her death that she had taken the tablets because she wanted to die. There was much more in that case to suggest suicide but there were, also, circumstances that pointed the other way. We held that it was the jury's business to resolve the doubt.

Defendant's motion to dismiss on the ground that plaintiffs had failed to comply with the policy provision requiring that due proof of death be furnished to the company " on the company's prescribed forms ", was properly denied.

The judgment should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and THACHER, JJ., concur.

Judgment affirmed.