■ DONALD F. WALLWORK et al., Appellants-Respondents, v. NEW YORK LIFE INSURANCE COMPANY, Respondent-Appellant.— Order, Supreme Court, New York County, entered on December 11, 1970, setting aside the verdict of the jury and remanding to a new trial, reversed on the law and the facts, the verdict of the jury is reinstated, and judgment directed for the plaintiffs on the verdict. Plaintiffs shall recover of defendant $50 costs and disbursements of this cross appeal. We do not find the jury's verdict against the weight of the evidence so to justify our setting it aside, nor do we find error of substance calling upon us to exercise discretionary power to order a new trial. The charge of the Trial Judge was proper, presented all the relevant theories — and there were no exceptions. The trial itself lasted from October 5 to October 10, 1970, as reflected in a record of 897 pages. We thus fail to see how a new trial would teach us anything we do not already know. The issues were essentially factual; in final effect, the trial was a conflict of expert testimony, and the jury has resolved these factual issues, including the credibility of witnesses, against the defendant. On the most crucial issue, none of the doctors could tell with accuracy the total dosage of the barbiturates consumed by the decedent, or the particular circumstances under which they were consumed. The testimony of Dr. Baden was ambivalent at best, countervailed by the plaintiffs' other expert, Dr. Freireich, whose testimony the jury clearly accepted, as they were free to do. Another trial would merely give the defendant a second opportunity to deflect liability, although in a complete fashion, the issues have already been submitted to the arbitrament of the jury. And the jury has determined the cause of death. Barring errors of substance, or prejudicial mistakes so as to prevent a fair trial, we believe it unwarranted that the jury's conclusion be set aside because it may not be consonant with the Trial Judge's evaluation of the evidence. This is axiomatic. (*Kelly* v. *Matson Elevator Co.*, 309 N. Y. 49; see, also, *Sophian* v. *Von Linde*, 22 A D 2d 34, affd. 16 N Y 2d 785.) Concur — Stevens, P. J., McGivern and Murphy, JJ.; Capozzoli, J., concurs in a memorandum, and Kupferman, J., concurs in part and dissents in part in a memorandum, as follows: Capozzoli, J. (concurring). A reading of *Wellisch* v. *Hancock Mut. Life Ins. Co.* (293 N. Y. 178) leads me to concur with the majority. In the cited case there was evidence showing that the insured, in addressing police, who were called to the scene of a commotion in which he and his wife were involved, made the statement (p. 182): "'Well, you won't come back, she won't be bothered with me any more'". In addition, when, later on the same day, the body was found in his automobile, there was discovered a scrap of paper on which the insured had written the following (p. 183): "'All life is only one dark hour. M. W. The best thing in this hapless strife is the end of life'". The court noted that it was conclusively shown that the insured had died from an overdose of seconal. However, it unanimously affirmed a finding by the jury in favor of the plaintiff which excluded suicide. At page 184 of the opinion

the court said: "There was no forthright threat of suicide. The man's statement to the police and his scribbled thoughts on life and death were no more than equivocal. * * * Reasonable men, we think, might reasonably come to one or the other answer to the question of fact sent to the jury by the Trial Justice. * * * The 'presumption against suicide' means that when death by violence is shown and an inference must be drawn by the jury as to suicide or not, then the jury should in justice and good conscience draw the inference of accident, not suicide." Later, at page 185, the court said: "For example, in *Martorella* v. *Prudential Ins. Co.* (268 N. Y. 586) we affirmed a judgment for the beneficiary despite proof that the insured, a hospital nurse who died from the effects of bichloride of mercury poisoning, told a physician before her death that she had taken the tablets' because she wanted to die. There was much more in that case to suggest suicide but there were, also, circumstances that pointed the other way. We held that it was the jury's business to resolve the doubt." In *Begley* v. *Prudential Ins. Co. of Amer.*, (1 N Y 2d 530, 533) in discussing the presumption against suicide, the court said: "When death has resulted from violence, the presumption against suicide does more than shift the burden of proof and upon having done so disappears from the case; it continues to the end of the case and if a fair question of fact is presented as to whether death was due to suicide or accident, then the jury should answer accident. (*Wellisch* v. *John Hancock Mut. Life Ins. Co.*, 293 N. Y. 178.) " Kupferman, J. (concurring in part and dissenting in part): Although the court's opinion does not differentiate it, there are essentially two parts to this case. Plaintiffs sue for the face amount on a $25,000 and a $10,000 ordinary life policy, respectively, and at the same time ask for an equal additional sum for accidental death of the insured. The legal principles to be applied are substantially different in the two aspects. For the ordinary life policy, the burden of proof to sustain the pleaded exception was on the defendant insurance company (30 N. Y. Jur., Insurance, § 1090) in the face, as well, of a presumption against death by suicide. (*Begley* v. *Prudential Ins. Co. of Amer.*, 1 N Y 2d 530; *Wellisch* v. *Hancock Mut. Life Ins. Co.*, 293 N. Y. 178.) Under such circumstances, where the jury has decided for the plaintiffs, as here, there can be no problem in accepting the jury findings, and I concur with the majority. (See *Sagorsky* v. *Malyon*, 307 N. Y. 584.) However, we have a different situation where the plaintiffs seek to recover on the accidental aspect of the policy, for which the plaintiffs have the burden of proof and which provides as follows: "Subject to the terms and conditions of the policy and these Accidental Death Benefit provisions, the Company will pay the Accidental Death Benefit, as part of the policy's death benefit proceeds, upon receipt of due proof that the Insured's death resulted directly, and independently of all other causes, from accidental bodily injury * * *. However, the Accidental Death Benefit will not be payable if death * * * results from * * * suicide, whether sane or insane, * * * nor will such benefit be payable if death is caused or contributed to by infirmity of mind or body, or any illness or disease other than a bacterial infection occurring in consequence of an accidental injury on the exterior of the body ". A recovery cannot be possible in the face of the clear objective testimony of Dr. Michael Baden, Deputy Chief Medical Examiner of the City of New York, and an acknowledged expert on the subject, who was the plaintiff's witness. Further, on any view of the evidence, this death did not result " directly, and independently of all other causes, from accidental bodily injury ". (*Le Glaire* v. *New York Life Ins. Co.*, 8 A D 2d 186.) Accordingly, I would affirm and

grant a new trial only as to the accidental death provision of the policy. (*De Gogorza* v. *Knickerbocker Life Ins. Co.*, 65 N. Y. 232.)