OPINION OF THE COURT
 

 Jones, J.
 

 In this action to recover the proceeds of a life insurance policy the jury was properly instructed with respect to the presumption against suicide and the evidence warranted submission of the issue to the jury. The contention of the insurer that the time has come to change the law with respect to the operation of such presumption is rejected.
 

 The insurance policy on the life of Edward Schelberger on which the present action is predicated was issued by defendant bank as insurer on May 1, 1978. Respondent, wife of the insured, was designated primary beneficiary. The policy contained the standard provision, authorized under section 155 (subd 2, par [d]) of the Insurance Law, that, “[i]f the Insured dies as a result of suicide within two years after the date of issue of this policy, the liability of the Savings Bank shall be limited to an amount equal to the premiums paid.” The insured died on December 25, 1979, well within the two-year period. The insurer tendered the amount equal to the premiums paid, but denied respondent’s claim to proceeds in the face amount of the policy on the ground that the insured’s death was a suicide.
 

 At trial before a jury, the court denied the insurer’s motion for a directed verdict, and the jury returned a
 
 *509
 
 verdict for the named beneficiary. On appeal, the Appellate Division, two Justices dissenting, affirmed. We agree with the majority at the Appellate Division.
 

 Appellant insurer argues before us that the instruction given by the trial court with respect to the presumption against suicide was not in accord with the pertinent law in the State of New York. In the first alternative, the insurer argues that if the instruction is found to have been in accord with current law, the time has come when such law should be changed. In a second alternative, the insurer contends that it was entitled to a directed verdict in its favor even under the law as stated in the instruction that was given. Finally, reversal of the order of the Appellate Division is sought on the basis of asserted errors in the course of the trial.
 

 With respect to the presumption against suicide, the trial court charged the jury as follows:
 

 “Now, there is a presumption against suicide since self-destruction is contrary to the general conduct of mankind. In making your determination, whether the defendant has sustained its burden of proving that plaintiff’s husband committed suicide, you should consider that presumption and of course, all of the evidence in this case. If your finding is that the circumstances are consistent with either a finding of accidental death or a finding of suicide, then your finding must be that the death was accidental and your verdict will be for the plaintiff.
 

 “You may make a finding of suicide only if you are satisfied from the evidence, and taking into consideration the presumption against suicide, that no conclusion other than suicide may reasonably be drawn.”
 

 In so charging, the trial court tracked the language of the charge set forth in charge 4:57 of New York Pattern Jury Instructions. This charge accurately stated the present law of New York
 
 (Begley v Prudential Ins. Co., 1
 
 NY2d 530). The pertinent authorities are identified and discussed in the opinion of Justice Bentley Kassal writing for the majority at the Appellate Division (93 AD2d 188), and no useful purpose would be served by our paraphrase of that opinion.
 

 
 *510
 
 We perceive no sufficient reason to accept appellant insurer’s alternative invitation to modify the law of our State with respect to the presumption against suicide. The presumption springs from strong policy considerations as well as embodying natural probability (see
 
 Wellisch v John Hancock Mut. Life Ins. Co.,
 
 293 NY 178, 184-185). The evidence submitted by the insurer as to current statistical data with respect to the incidence of suicide as a major cause of death does not warrant a shift in our law, nor does the fact that neither suicide nor attempted suicide is proscribed by our criminal law. It is relevant, too, that the subject of presumptions and their operational significance is now before our Legislature as it considers the Proposed Code of Evidence. Section 303 addresses the subject, and the comment to that section cites the present law of New York with respect to the presumption against suicide (as embodied in NY PJI 4:57) with apparent approval. The presumption constitutes a statement of public policy of broad application rather than prescribing a means for resolving the competing claims to justice in an individual case. Should the Legislature desire to address the pertinent issues of public policy, consideration of the Proposed Code of Evidence offers at least an oblique opportunity for it to do so.
 

 No evidence is tendered that the life insurance industry confronts financial distress or is otherwise faced with compelling reasons which would persuade it to seek a revision of the present operation of the presumption against suicide. Indeed, were that shown to be the state of affairs, recourse would better be had to the Department of Insurance as the governmental agency vested by the Legislature with responsibility for oversight of the industry and the proper protection of the interests of policyholders.
 

 The insurer’s contention that it was entitled to a directed verdict in its favor must likewise be rejected. As the jury was instructed, a finding of suicide is warranted only if the jury is satisfied from the evidence, and taking into account the presumption against suicide, that no conclusion other than suicide, may reasonably be drawn. The insurer is entitled to a directed verdict only if, as a matter of law, the evidence compels the conclusion that the death was a
 
 *511
 
 suicide. That conclusion is not compelled by the proof in this record.
 

 The evidence was that the insured had died in consequence of the ingestion of 30 to 40 Tuinal capsules — a barbiturate composed of equal parts of secobarbital and amobarbital. Countervailing the significance which might be attached to such ingestion by a person unfamiliar and unaccustomed to such drugs was evidence that the insured was a frequent user of the drug and that three months prior to his death he had taken a dose of perhaps 40 Tuinal capsules from which, after emergency hospitalization, he had recovered. It would not be unreasonable in this circumstance to conclude that the insured had taken the capsules which led to his death for self-indulgence only, with no intention of causing his own death. The fact that the telephone had been pulled off the wall, without more, was nonindicative of self-destruction. The autopsy and death certificates listing suicide as the cause of death which were admitted in evidence represented no more than the opinion of the subscribing physician, were not conclusive, and were of limited probative value in view of what the jury may have considered was the effective cross-examination of the subscriber.
 

 Not to be ignored was the absence of any evidence that the insured had left a suicide note, that he was suffering from any debilitating physical condition or facing any financial hardship or adverse business prospects or reversals. There was evidence which might have been credited by the jury that, although there had been stormy occasions in their married life, on the night of his death, after returning from a Christmas Eve exchange of presents with her mother his wife expected to celebrate Christmas with the insured and their children. A neighbor testified that she had seen the insured between 7 and 8 o’clock in the evening before his death, that he appeared friendly and happy, and that they exchanged Christmas greetings. She testified further that she saw him again between 11 and 11:30 talking to her husband and that he was then happy and smiling. The witness last saw the insured after 2 o’clock in the morning when he was talking and laughing with another neighbor, although he then looked exhausted and went right into his house.
 

 
 *512
 
 On this state of the record the question whether the insured’s death was a suicide was properly submitted to the jury and there is no basis in law for disturbing its verdict that it was not.
 

 We advert briefly to the assertions of trial error advanced by the insurer, none of which call for a reversal. The fact that the autopsy report was annexed to the complaint did not constitute a judicial admission that the death was a suicide. By like token, it was not an abuse of discretion to refuse to permit counsel for the insurer to use the complaint and attached autopsy report on cross-examination of the beneficiary. Nor was it an abuse of discretion not to permit counsel to exhibit a bottle of Tuinal capsules to the jury. Finally, the claims of prejudicial conduct on the part of plaintiff’s counsel, to the extent that they were preserved, do not constitute grounds for reversal.
 

 Accordingly, for the reasons stated, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Cooke and Judges Jasen, Wachtler, Meyer, Simons and Kaye concur.
 

 Order affirmed, with costs.