Mary Eileen O'Keefe **BATEMAN**, Executor of the Estate of Michael J. Bateman, and Mary Eileen O'Keefe Bateman, Individually, Plaintiffs,

v.

**EQUITABLE VARIABLE LIFE INSURANCE COMPANY and INA Life Insurance Company of New York**, Defendants.

No. 90 Civ. 0011 (HB).

United States District Court, S.D. New York.

Oct. 12, 1995.

Joseph M. Costello and John F. Parker, Costello, Shea & Gaffney, New York City, for Plaintiff Mary Eileen O'Keefe Bateman, Individually.

Kevin J. Brennan, Dwyer & Brennan, New York City, for Defendant INA Life Insurance Company of New York.

**OPINION AND ORDER**

BAER, District Judge.

Plaintiffs Mary Eileen O'Keefe Bateman, as Executrix of the estate of Michael J. Bateman (the "Estate"), and Mary Eileen O'Keefe Bateman, individually, brought this suit against defendants Equitable Variable Life Insurance Company and INA Life Insurance Company of New York ("LICONY") to recover damages resulting from the al-leged breach of two separate insurance policies.

Plaintiffs originally filed this action in New York State Supreme Court. After defendants removed it to federal court, the plaintiffs filed an amended complaint and included a claim under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA").

The amended complaint initially included three causes of action: the first cause of action has been settled and dismissed; the third cause of action has been withdrawn. The second and sole cause of action remaining in this case is the ERISA claim asserted by Mrs. Bateman, in her individual capacity, against LICONY. She seeks to recover benefits as a beneficiary of her late husband's group accident insurance policy issued by LICONY.

The parties provided this Court with a stipulated record from which to determine their respective rights and obligations under the deceased's insurance policy. For the reasons that follow, this Court finds in favor of LICONY.

**I. Facts**

Kidder Peabody & Co., Inc. ("Kidder"), a brokerage house, employed Michael Bateman as an Assistant Vice President. Kidder maintained an employee benefit plan (the "Plan"). As part of the Plan, Kidder offered benefits in case of accidental death or injury (the "Policy"), which were funded by a policy of group insurance issued by LICONY to Kidder. Mr. Bateman enrolled in the Policy in the principal sum of $500,000, designating two beneficiaries—his former wife, Nancy Bateman (in the sum of $50,000) and the plaintiff, Mrs. Bateman (in the sum of $450,000). (R. at 101.) This policy provided, *inter alia,* benefits for loss resulting from bodily injuries caused by accident, (R. at 75), and excluded benefits for any loss resulting from "[i]ntentionally self-inflicted injuries, suicide, or any attempt thereat, while sane or insane...." (R. at 76.)

On October 19, 1987, a date commonly referred to as "Black Friday" in the financial community, the New York Stock Exchange

suffered tremendous losses. Mr. Bateman took a personal loss that day. As the record makes clear, he became depressed and sought psychiatric treatment from Dr. Robert Brooks, M.D., P.C. Dr. Brooks saw Mr. Bateman on three occasions from November 9, 1987, through November 17, 1987, (R. at 200–202), and diagnosed him as suffering from "a major depression," (R. at 650), which is frequently accompanied by suicidal ideation. (R. at 652.) Dr. Brooks prescribed anti-depressants to Mr. Bateman, (R. at 652), and noted that Mr. Bateman did not complain of side effects from the medication. (R. at 665.) Throughout the treatment, Dr. Brooks was concerned that Mr. Bateman was suicidal. (R. at 675.)

On November 22, 1987, Mr. Bateman died from injuries received after plummeting thirty-two stories from the balcony of his Manhattan apartment. The impact site of his body was ten feet east and thirty feet south from the base of the building beneath the apartment balcony. (R. at 230.) Neither a suicide note nor evidence of foul play was discovered.

Mrs. Bateman submitted a claim to LICONY for accident benefits. On January 7, 1992, LICONY rejected Mrs. Bateman's claim after concluding that Mr. Bateman committed suicide and could not have accidentally fallen from his balcony. By letter dated September 18, 1992, Mrs. Bateman requested LICONY to reconsider its January 7, 1992 decision and to determine whether Mr. Bateman may have been a homicide victim, or whether he may have involuntarily taken his life while under the influence of medications. In its March 29, 1993 letter to Mrs. Bateman, LICONY rejected both of these arguments and affirmed its denial of her claim.

## II. Discussion

■ ERISA regulates plans established or maintained by employers or employee organizations that, through the purchase of insurance or otherwise, provide benefits to employees. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). A denial of benefits challenged under ERISA is reviewed *de novo*, unless the benefit plan gives the fiduciary the discretionary authority to determine eligibility for the benefits and construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc.*, 37 F.3d 55, 59 (2d Cir.1994) (citation omitted); *Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 102 (2d Cir.1991) (citation omitted). Because the Plan in this action is governed by ERISA and does not give discretionary authority to the fiduciary, this Court exercises *de novo* review.

■ Although ERISA establishes specific requirements for employee benefit plans, it does not regulate the substantive content of the plans. *Metropolitan Life Ins. Co. v. Commonwealth of Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985). Courts, therefore, must fill in the resulting gaps through the development of federal common law. *Firestone Tire & Rubber Co.*, 489 U.S. at 110, 109 S.Ct. at 954; *Masella*, 936 F.2d at 107.

ERISA is silent on which party bears the burden of proof in a challenge of a denial of benefits. To fill this gap, Mrs. Bateman urges this Court to fashion its own common law and apply New York State's presumption against suicide. According to this presumption, "[A] finding of suicide is warranted only if the [trier of fact] . . . is satisfied from the evidence, and taking into account the presumption against suicide, that no conclusion other than suicide may reasonably be drawn." *Schelberger v. Eastern Savings Bank*, 60 N.Y.2d 506, 510, 470 N.Y.S.2d 548, 458 N.E.2d 1225 (1983). The insurer may rebut this presumption by establishing by a preponderance of the credible evidence that the policy holder committed suicide. *Joseph Schachter & Co. v. John Hancock Mutual Life Ins. Co.*, 801 F.2d 563, 565 (2d Cir.1986) (per curiam). Conversely, LICONY contends that the burden remains with Mrs. Bateman to prove that her claim is covered under the Policy. *See, e.g. Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653 (8th Cir. 1992).

■ This Court finds it unnecessary to fashion its own common law because, even with the benefit of the presumption against suicide, Mrs. Bateman cannot prevail. First, Dr. Brooks diagnosed Mr. Bateman as suffering from a major depression. (R. at 650.) According to Dr. Brooks, Mr. Bateman was despondent, depressed about his financial predicament, unable to sleep, nervous, and cynical about reversing his financial troubles. *Id.* Dr. Brooks feared that Mr. Bateman was suicidal, (R. at 675.), and noted that major depressive episodes, such as the one experienced by Mr. Bateman, are commonly accompanied by "recurrent suicidal ideation without a specific plan, or a suicide attempt. . . ." (R. at 1114.)

Second, it seems beyond peradventure that Mr. Bateman did not accidentally fall over the balcony guardrail after suffering a dizzy spell, as plaintiff contends. Defendant's expert witness, Dr. John Fruin, an engineer specializing in pedestrian traffic, determined that "it was not possible for Mr. Bateman to have fallen over the railing due to dizziness or fainting." The height of the guardrail made it physically impossible for him to have fallen over it, (R. at 1088), even if he was walking into the guardrail at a brisk speed. (R. at 1087.) Dr. Fruin's finding is supported by tests conducted by the National Bureau of Standards tests of over-the-guardrail falls. (R. at 1091–1096.)

Furthermore, plaintiff's own expert witness, criminologist Dr. Peter DeForest, concluded that given the height of the guardrail on the balcony and Mr. Bateman's height, it was not possible for Mr. Bateman to have fallen over the guardrail unless he was standing on a raised object. (R. at 231–232.) The record, however, is bereft of evidence suggesting that any objects upon which Mr. Bateman could have stood, including the balcony furniture, were near the guardrail after the fateful incident occurred. (R. at 842, 857.)

In addition, defendant's other expert witness, Dr. Rene Testa, a professor of civil engineering at Columbia University, concluded that even given "very conservative assumptions, the wind could not have been strong enough to cause Mr. Bateman's body to impact the ground as far from the balcony as it did. There had to have been an initial horizontal velocity when the body left the balcony." (R. at 1068.) Thus, the evidence supports the unfortunate conclusion that Mr. Bateman jumped over the guardrail.

Third, plaintiff's argument that her husband could have been murdered is not supported by the record. Mrs. Bateman does not provide any evidence from which a conclusion may reasonably be drawn that her husband was the victim of foul play. There was no indication of forced entry into the Bateman's apartment. Moreover, Mrs. Bateman was the only other person in the apartment when the fateful incident occurred.

Last, the record does not support Mrs. Bateman's contention that her late husband could have "unintentionally" committed suicide due to a possible side effect from his medications. She did not proffer expert testimony that a suicide attempt was a possible side effect of Mr. Bateman's medications, (R. at 243–245, 652–657), and there is no evidence that the medications were likely to precipitate a suicide attempt. (R. at 327, 330, 333.) Therefore, this Court cannot reasonably conclude that Mr. Bateman "unintentionally" took his own life.

### III. Conclusion

The only reasonable conclusion that can be drawn from the evidence before the Court is that Mr. Bateman committed suicide. Accordingly, Mrs. Bateman is not entitled to recover benefits from her late husband's insurance policy because the policy excluded benefits for any loss resulting from suicide.

For the reasons stated above, this Court finds in favor of LICONY. The Clerk of the Court is directed to mark this matter as closed on the docket.

**SO ORDERED.**