■ In the Matter of GEORGE INFANTE, as Administrator of the Estate of ROSEMARY A. INFANTE, Deceased, Appellant, v CAROLINE R. DIGNAN, M.D., as Medical Examiner of Monroe County, et al., Respondents. [865 NYS2d 167]—

Appeal from a judgment (denominated order and judgment) of the Supreme Court, Monroe County (Thomas A. Stander, J.), entered March 16, 2007 in a proceeding pursuant to CPLR article 78. The judgment dismissed the petition.

It is hereby ordered that the judgment so appealed from is reversed on the law without costs, the petition is granted, the determination is annulled and respondents are directed to amend the corrected death certificate of Rosemary A. Infante forthwith to state that the manner of death was accidental or undetermined circumstances.

Memorandum: Petitioner, as administrator of the estate of Rosemary A. Infante (decedent), commenced this CPLR article 78 proceeding seeking to annul the determination that the manner of death of decedent was suicide and to compel respondents to determine that the manner of death was accidental or undetermined circumstances. It is undisputed that the death of decedent was caused by multiple drug intoxication and that, prior to her death, decedent had several serious medical conditions for which she took multiple prescription medications. We note at the outset that "[a] medical examiner's determination that a decedent committed suicide is a quasi-judicial determination . . . and, hence, is reviewable in a proceeding pursuant to

CPLR article 78" (*Matter of Leib v Paparo,* 84 AD2d 538 [1981], *lv denied* 55 NY2d 603 [1981]).

Supreme Court erred in dismissing the petition and, instead, should have granted it inasmuch as the evidence before respondents was insufficient to rebut the presumption against suicide. It is well established that "[t]he presumption [against suicide] springs from strong policy considerations [and also] embod[ies] natural probability" (*Schelberger v Eastern Sav. Bank,* 60 NY2d 506, 510 [1983]; *see generally Green v William Penn Life Ins. Co. of N.Y.,* 48 AD3d 37, 39 [2007]). Indeed, it is "one of the strongest presumptions in the law" (*Schelberger v Eastern Sav. Bank,* 93 AD2d 188, 190 [1983], *affd* 60 NY2d 506 [1983]), and it "constitutes a statement of public policy of broad application rather than prescribing a means for resolving the competing claims to justice in an individual case" (*Schelberger,* 60 NY2d at 510). "The presumption arises in recognition of the fact that self-destruction 'is contrary to the general conduct of [hu]mankind' " (*Schelberger,* 93 AD2d at 192, quoting *Mallory v Travelers' Ins. Co.,* 47 NY 52, 54-55 [1871]), and "of the truth drawn from general human experience, that death by suicide is an improbability [and] that most [individuals] cling to life" (*Wellisch v John Hancock Mut. Life Ins. Co.,* 293 NY 178, 184 [1944]).

Although the presumption against suicide has most commonly been applied in the context of an action to recover the proceeds of a life insurance policy (*see e.g. Schelberger,* 60 NY2d 506, 508 [1983]; *Begley v Prudential Ins. Co. of Am.,* 1 NY2d 530, 532 [1956]; *Wellisch,* 293 NY 178, 180 [1944]), we nevertheless conclude that it should be applied equally in the context of this proceeding seeking review of a medical examiner's determination, particularly in view of the statement of the Court of Appeals that the presumption is to be broadly applied (*see Schelberger,* 60 NY2d at 510). To conclude otherwise would be to fail to recognize "the underlying nature and strength of the presumption" (*Schelberger,* 93 AD2d at 189), and to ignore the above-quoted language of the Court of Appeals in *Schelberger* and *Wellisch.*

In support of the petition, petitioner submitted letters from two of decedent's personal friends, both of whom are physicians, establishing that decedent was a former nun and a deeply religious individual who died at her home on Easter Sunday. According to those friends/physicians, it was difficult for decedent to manage the schedule required for the safe administration of the multiple prescription medications. Those medications were prescribed for serious physical conditions, including cancer,

rheumatoid arthritis, and cracked ribs and vertebrae resulting from a fall. The letters of the friends/physicians also described the deep commitment of decedent to her two young adopted daughters and her enthusiasm about planning for their futures. We note in particular that one of the letters set forth that suicide would have been "unthinkable" for decedent and that she would not have exposed her children "to the horror of discovering their mother dead at home nor leave them with the legacy of another abandonment." In his reply to respondents' answer, petitioner also submitted a letter from decedent's treating psychiatrist stating that, prior to her death, decedent was not suicidal but, rather, she was happy to have her children with her and was planning for the future.

A medical examiner has the statutory responsibility and legal authority to "fully investigate the essential facts concerning the death" (County Law § 674 [2]). Here, respondent Deputy Medical Examiner asserted in an opposing affirmation that he based his conclusion that decedent's death was a suicide primarily on the toxicology finding of a high heart blood concentration of Fluoxetine, a drug commonly known as Prozac. He also stated that he "became aware" that decedent had a history of depression, was under the care of a psychiatrist and had been hospitalized within the past six months for a prescription drug overdose, but he did not indicate the source of that information. Further, there is no indication in the record that he interviewed decedent's family, friends or psychiatrist, that he considered decedent's religious background, that he reviewed records concerning decedent's medical history, or that he evaluated the circumstances immediately preceding decedent's death. Indeed, respondents indicated in their answer to the petition that they were unaware that decedent was taking prescription medication for various medical conditions, although such information was available to them had they made appropriate efforts to obtain it. We note in addition that the medication determined by respondents to be present in decedent's body at an exceedingly high level was an antidepressant, although a narcotic pain reliever and a sleeping aid that had been prescribed for decedent would seem to have been a more likely choice for an intentional and lethal overdose.

In *Schelberger*, the Court of Appeals wrote in the context of a jury trial that "a finding of suicide is warranted only if the jury is satisfied from the evidence, and taking into account the presumption against suicide, that no conclusion other than suicide may reasonably be drawn" (60 NY2d at 510). We conclude that the same principle should be applied in reviewing a medi-

cal examiner's determination of the manner of death. Here, the determination was based upon the autopsy and toxicology report as well as information concerning the scene of the death, i.e., that there were prescription medication bottles on the floor near decedent, some of which were opened. We nevertheless conclude, however, based on the record before us, that the evidence from which the determination was made failed to rebut the presumption against suicide, and thus that the determination is arbitrary and capricious (*cf. Leib*, 84 AD2d 538 [1981]).

All concur except Scudder, P.J., and Hurlbutt, J., who dissent and vote to affirm in the following memorandum.

Scudder, P.J., and Hurlbutt, J. (dissenting). We respectfully dissent because, in our view, Supreme Court properly dismissed the petition in reliance on the decision of the First Department in *Matter of Mitchell v Helpern,* which was affirmed by the Court of Appeals with no writing (17 AD2d 922 [1962], *affd* 14 NY2d 817 [1964]). The petition in *Mitchell* sought the same relief sought by petitioner herein, i.e., the expungement of the Medical Examiner's finding that the manner of death was suicide and the entry "in the records that it was accidental" (*id.*). The standard of review applied by the First Department in *Mitchell* was whether the determination of the cause of death was "arbitrary," i.e., whether "no reasonable [person] would be expected to make it" (*id.*). The First Department determined that, although a reasonable view of "the medical and other facts" could lead in the alternative to a finding of accident or suicide, or a finding that the cause of death was unknown, a finding of suicide could not be considered arbitrary "even if . . . it might be assumed [that the Medical Examiners] were mistaken" (*id.*). The First Department's reasoning in *Mitchell* comports with the well-established principle that the limited role of the court in a CPLR article 78 proceeding in the nature of mandamus to review is to determine "whether the agency determination was arbitrary and capricious or affected by an error of law" (*Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.,* 77 NY2d 753, 758 [1991]; *see* CPLR 7803 [3]; *Matter of Arrocha v Board of Educ. of City of N.Y.,* 93 NY2d 361, 363 [1999]). Where there is a rational basis for the administrative determination, it must be sustained (*see Arrocha* at 363; *Matter of Bambeck v State Div. of Hous. & Community Renewal, Off. of Rent Admin.,* 129 AD2d 51, 57-58 [1987], *lv denied* 70 NY2d 615 [1988]). The majority, however, ignores and indeed vitiates that fundamental rule of judicial deference to administrative determinations by imposing on a medical examiner the evidentiary presumption against suicide when exercising his or

her statutory function of determining "the cause of death, or . . . the means or manner of death" (County Law § 674 [3] [a]).

We note in addition that the majority improperly relies on information set forth in documents that were submitted in support of the petition. Those documents were created approximately four months after the final determination of suicide was made and thus could not have been considered by the Deputy Medical Examiner in determining the manner of death. It is beyond cavil that "[j]udicial review of [an] administrative determination[ ] is confined to the facts and record adduced before the agency [or individual responsible for the determination]" (*Matter of Yarbough v Franco*, 95 NY2d 342, 347 [2000] [internal quotation marks omitted]; *see Matter of World Buddhist Ch'An Jing Ctr., Inc. v Schoeberl*, 45 AD3d 947, 951 [2007]).

We further note that the majority implicitly concedes that the facts disclosed to respondent Deputy Medical Examiner by the autopsy, the toxicology report and the investigation at the scene reasonably support the determination that the manner of death was suicide yet, after applying the presumption against suicide to those facts, the majority nevertheless concludes that the determination is arbitrary and capricious. To be sure, the presumption against suicide is a strong one, and where it applies, i.e., in a contested evidentiary hearing such as the trial of an action to recover the proceeds of a life insurance policy, "a finding of suicide is warranted only if 'no conclusion other than suicide may reasonably be drawn' " (*Green v William Penn Life Ins. Co. of N.Y.*, 48 AD3d 37, 40 [2007], *mot to dismiss appeal denied* 10 NY3d 892 [2008], quoting *Schelberger v Eastern Sav. Bank*, 60 NY2d 506, 510 [1983]). Nothing in *Schelberger* or any other authority suggests, however, that the presumption against suicide should be applied by a medical examiner in discharging his or her administrative function of determining "the means or manner" of an unattended death (County Law § 674 [3] [a]; *see also* §§ 671, 673). The "public policy of broad application" language quoted by the majority from *Schelberger* was used in that decision only in the context of rejecting the contention of the defendant bank that issued the life insurance policy that, for policy reasons, the presumption against suicide should be revised (*see Schelberger*, 60 NY2d at 510). Further, in our view, the statements in *Matter of Leib v Paparo* (84 AD2d 538 [1981], *lv denied* 55 NY2d 603 [1981]) characterizing a medical examiner's determination of suicide as "quasi-judicial" and noting that the presumption against suicide "was overcome" are simply erroneous dicta, given that the *Leib* decision cites and indeed follows *Mitchell*.

Finally, we note that, not only does the majority's decision utterly conflict with the black-letter rule that an administrative determination that has a rational basis must be left undisturbed, it also effectively precludes a medical examiner from performing his or her administrative function, which is "to impart objective information to the appropriate authorities for the benefit of the public at large" (*Lauer v City of New York*, 95 NY2d 95, 103 [2000]). The majority is requiring a medical examiner to apply the presumption against suicide, but only in the rarest of cases will the evidence before a medical examiner yield no reasonable inference other than suicide (*see e.g. Green*, 48 AD3d at 40; *Matter of Wiktorowicz v Kimberly-Clark Corp.*, 99 AD2d 903, 904 [1984], *lv denied* 62 NY2d 605 [1984]; *Matter of Forbrick v Riverbay Corp.*, 87 AD2d 936, 937 [1982]). Thus, the practical effect of the majority's decision is that, in most cases, the outcome of a medical examiner's determination will be foreordained, thus preventing the medical examiner from objectively determining the cause of death or the means or manner of death pursuant to County Law § 674 (3) (a). Here, the facts set forth in the verified petition, the letters and affidavit attached to the petition, and the attachments to petitioner's brief on appeal all suggest that respondents' determination of suicide may well be mistaken, but they cannot and do not render that determination arbitrary or irrational (*see Mitchell*, 17 AD2d 922 [1962]). In our view, rather than bringing this proceeding, petitioner should have sought a redetermination by respondents based on those facts (*see generally Lauer*, 95 NY2d at 98). We therefore would affirm the judgment. Present—Scudder, P.J., Hurlbutt, Centra, Fahey and Peradotto, JJ.