[907 NE2d 702, 879 NYS2d 824]

In the Matter of GEORGE INFANTE, as Administrator of the Estate of ROSEMARY A. INFANTE, Deceased, Respondent, v CAROLINE R. DIGNAN, M.D., as Medical Examiner of Monroe County, et al., Appellants.

Argued March 25, 2009; decided May 5, 2009

## POINTS OF COUNSEL

*Daniel M. De Laus, Jr., County Attorney,* Rochester (*Howard A. Stark* and *Michael E. Davis* of counsel), for appellants. The Fourth Department majority improperly applied a presumption against suicide and superseded the deputy medical examiner's determination with its own opinion. (*Schelberger v Eastern Sav. Bank,* 60 NY2d 506; *Rinaldo v New York City Tr. Auth.,* 39 NY2d 285; *Begley v Prudential Ins. Co. of Am.,* 1 NY2d 530; *People v Miller,* 257 NY 54; *People v Cuozzo,* 292 NY 85; *People v Jandelli,* 116 Misc 2d 384; *Lauer v City of New York,* 95 NY2d 95; *Flacke v Onondaga Landfill Sys.,* 69 NY2d 355; *Matter of City of Rensselaer v Duncan,* 266 AD2d 657; *Matter of Yarbough v Franco,* 95 NY2d 342.)

*Paul F. Stavis,* Castleton-on-Hudson, and *Kenneth J. Doyle* for respondent. I. The presumption against suicide applies to the medical examiner under the common law, the Constitution and the case law of the State of New York. (*Washington v Glucksberg,* 521 US 702; *Matter of Von Holden v Chapman,* 87 AD2d 66; *Matter of Senior v Boyle,* 221 NY 414; *Matter of Leib v Paparo,* 84 AD2d 538, 55 NY2d 603; *Schelberger v Eastern Sav. Bank,* 60 NY2d 506; *Shipman v Protected Home Circle,* 174 NY 398; *Duhan v Milanowski,* 75 Misc 2d 1078; *Matter of Merlin v Bradess,* 17 Misc 2d 724; *Matter of Newbrand v City of Yonkers,* 285 NY 164; *Begley v Prudential Ins. Co. of Am.,* 1 NY2d 530.) II. Even if the presumption against suicide is held not to apply to the medical examiner in this case, the determination by the Monroe County medical examiner of suicide as the manner of death of Rosemary A. Infante is arbitrary and capricious such that no reasonable person would be expected to make it. (*Matter of Mitchell v Helpern,* 17 AD2d 922, 14 NY2d 817; *Green v*

*William Penn Life Ins. Co. of N.Y.,* 48 AD3d 37; *Wallwork v New York Life Ins. Co.,* 38 AD2d 804; *Schelberger v Eastern Sav. Bank,* 60 NY2d 506; *Rivers v Katz,* 67 NY2d 485; *Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal,* 75 NY2d 206; *Matter of SoHo Alliance v New York City Bd. of Stds. & Appeals,* 264 AD2d 59; *Matter of Goldstein Constr. Corp. v Gliedman,* 117 AD2d 170.) III. This Court should affirm the Appellate Division's order directing the medical examiner "to amend the corrected death certificate of Rosemary A. Infante forthwith to state that the manner of death was accidental or undetermined circumstances." IV. The supplemental record contains materials that were utilized by the court below, by the medical examiner, or are otherwise public records. (*Matter of Altimari v Meisser,* 23 AD2d 672; *Dunham v Townshend,* 118 NY 281.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Leonard J. Koerner, Barry P. Schwartz* and *Scott Shorr* of counsel), for Office of the Chief Medical Examiner of the City of New York, amicus curiae. The three-Justice Appellate Division majority erred by abandoning the rational basis standard of review, applying a presumption against suicide, and substituting its judgment for the judgment of the medical examiner. (*Matter of Mitchell v Helpern,* 17 AD2d 922, 14 NY2d 814; *Matter of Soman v Di Maio,* 58 AD2d 521; *Matter of Merlin v Bradess,* 17 Misc 2d 724; *Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.,* 77 NY2d 753; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222; *Matter of Walker v State Univ. of N.Y. [Upstate Med. Univ.],* 19 AD3d 1058, 5 NY3d 713; *Wellisch v John Hancock Mut. Life Ins. Co.,* 293 NY 178; *Broun v Equitable Life Assur. Socy. of U. S.,* 69 NY2d 675; *Begley v Prudential Life Ins. Co. of Am.,* 1 NY2d 530; *Garrow v State of New York,* 268 App Div 534, 294 NY 741.)

*Tobin and Dempf LLP,* Albany (*Michael L. Costello* of counsel), for Most Reverend Howard J. Hubbard, D.D., amicus curiae. Properly applied, the presumption against suicide should exhibit recognition and consideration of a decedent's religious faith.

**OPINION OF THE COURT**

READ, J.

Because of the circumstances of decedent Rosemary A. Infante's death on April 16, 2006, the Monroe County Office of

the Medical Examiner investigated its cause. In an autopsy report dated August 8, 2006, the medical examiner assigned to the case, an experienced forensic pathologist, concluded that decedent had died of multiple drug intoxication and that the manner of her death was suicide.

On December 8, 2006, petitioner George Infante, decedent's father and the administrator of her estate, commenced this CPLR article 78 proceeding, alleging that "th[e] classification of decedent's death as a suicide [was] not based upon any credible evidence and [was] simply speculation, and as such the finding [was] arbitrary and capricious and/or an abuse of discretion." He sought a declaration that the manner of decedent's death was unintentional or undetermined rather than suicide.

On February 2, 2007, Supreme Court dismissed the petition, adopting the reasoning of the Appellate Division's decision in *Matter of Mitchell v Helpern* (17 AD2d 922 [1st Dept 1962], *affd without op* 14 NY2d 817 [1964]), where a petitioner likewise sought to compel a medical examiner to revise a death certificate attributing death to suicide. Quoting *Mitchell*, the trial judge observed that "[w]hen the medical and other facts could sustain different inferences, 'the determinations of the medical examiners must be sustained as far as their entries on the public record are concerned unless the determinations are arbitrary' "; and that " '[a] public determination is arbitrary when no reasonable man would be expected to make it.' " Applying these principles to the facts of the case, Supreme Court acknowledged that "[a]n impartial evaluation of the medical and factual circumstances . . . could result in differing conclusions of the manner of death as an accident or cause unknown or suicide"; however, because "[t]here [was] sufficient information on the record for a reasonable person to make the finding of suicide," the medical examiner's "determination of the manner of death as suicide . . . [was] not arbitrary."

On appeal, the Appellate Division, with two Justices dissenting, reversed on the ground that "the evidence before [the medical examiner] was insufficient to rebut the presumption against suicide" (*Matter of Infante v Dignan*, 55 AD3d 1258, 1259 [4th Dept 2008]). The majority recognized that the medical examiner's "determination was based upon the autopsy and toxicology report as well as information concerning the scene of the death," but nonetheless concluded that "the evidence from which the determination was made failed to rebut the presumption against

suicide, and thus . . . [was] arbitrary and capricious" (*id.* at 1261).

The two dissenting Justices would have applied the CPLR article 78 standard of review unencumbered by any common-law presumption. As a result, although there were facts "suggest[ing] that [the medical examiner's] determination of suicide may well [have been] mistaken," his determination was not "arbitrary or irrational" in their view (*id.* at 1263). The dissenting Justices found no authority indicating that the presumption against suicide—an evidentiary rule in litigation involving life insurance claims—was relevant where "a medical examiner . . . discharg[ed] his or her administrative function of determining the means or manner of an unattended death" (*id.* at 1262, quoting County Law § 674 [3] [a] [internal quotation marks omitted]). The double dissent on an issue of law brought the case to us (*see* CPLR 5601 [a]), and we now reverse.

■ New York's common-law presumption against suicide has no role to play in a medical examiner's determination of the cause or manner of a decedent's death, or the judicial review of such a determination (*see e.g.* Public Health Law § 4143 [3] [directing medical examiner to certify whether a death from external causes was "*probably* accidental, suicidal or homicidal" (emphasis added)]). The presumption is an evidentiary rule relevant to resolving disputes over life insurance proceeds (*see Green v William Penn Life Ins. Co. of N.Y.*, 12 NY3d 342 [2009] [decided today]). We have never considered the presumption in any other context.

As a statutory matter, the County Law requires a medical examiner to "determine the means or manner of death" (County Law § 674 [3] [a]; § 671) for the benefit of the public at large rather than for the benefit of individuals, including a decedent's family members (*see e.g. Lauer v City of New York*, 95 NY2d 95 [2000] [New York City medical examiner did not owe duty of care to father of child whose death was wrongly attributed to homicide]). If medical examiners were forced to leaven their decision-making with a common-law evidentiary presumption, the medical and scientific quality of their work would be seriously compromised to the detriment of the citizenry.

In this case, there is evidentiary support for the medical examiner's determination of suicide, although—as every judge who has reviewed the record has observed—there is also reason to believe that decedent may have accidentally overdosed on

prescription medication. As was pointed out 47 years ago in *Mitchell*, "[i]n . . . an arguable situation capable of sustaining different inferences, the determinations of the Medical Examiners must be sustained . . . unless [they] are arbitrary" (17 AD2d at 922).

■ Here, the medical examiner's determination was not arbitrary. He performed an autopsy, during which he removed samples of decedent's heart blood, urine, liver, brain, and gastric contents for comprehensive drug screen analysis. The results of this analysis, which were reported by an experienced forensic toxicologist, disclosed an extremely high heart blood concentration of the drug fluoxetine (commercially known as Prozac)—a level 18 to 20 times higher than would be expected with normal therapeutic usage. In addition, the level of a fluoxetine metabolite in decedent's liver was comparatively high in relation to the parent drug's level in her heart blood. The medical examiner characterized these autopsy and toxicological findings as "most significant" in leading him to conclude that decedent's manner of death was suicide. In his opinion, these levels and their ratio were consistent with intentional excessive consumption, but not chronic overusage or accidental overdose. In short, the medical examiner set forth a reasonable basis for his determination in an area where administrative judgment involves specialized medical and scientific expertise (*see generally Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363 [1987] ["where . . . the judgment of the agency involves factual evaluations in the area of the agency's expertise and is supported by the record, such judgment must be accorded great weight and judicial deference"]).

Accordingly, the order of the Appellate Division should be reversed, with costs, and Supreme Court's judgment reinstated.

Chief Judge LIPPMAN and Judges CIPARICK, SMITH, PIGOTT and JONES concur; Judge GRAFFEO taking no part.

Order reversed, etc.